Good morning, Illinois Appellate Court. First District Court is now in session. The Second Division, the Honorable Justice Nathaniel House presiding. Case number 22-1324, People v. Marvin Bryant. Good morning. My name is Nathaniel House. I'm a judge of the Illinois Appellate Court and presiding over this case with me this morning are Justices Margaret McBride and Cynthia Cobbs. This case is being heard via Zoom. We're going to follow this allow each party interned to have 10 minutes of uninterrupted presentation after which the judges ask questions. The appellate will be allowed to make a short rebuttal. After that we may ask questions and then take the case under advisement. Do you have any questions about how we're going to proceed? No, Your Honor. Okay, who's representing the appellant? I'm Phil Payne from the State Appellate Defender here on behalf of the appellant Marvin Bryant. Okay, and who's representing the appellee? Assistant State's Attorney Kimberly Reeve on behalf of the people. Alrighty, alrighty. Mr. Payne, you may proceed when you're ready. Thank you. Good morning, Your Honors and counsel. May it please the court. Again, I'm Phil Payne here on behalf of Marvin Bryant who appeals the denial of a leave to file successive post-conviction petition. Nearly 40 years ago, Marvin Bryant was sentenced to natural life in prison under Illinois' habitual criminal statute. His status as a habitual criminal rested on a prior conviction from 1975, which occurred when Bryant was just 19 years old. He's been in prison serving that sentence ever since. In 2021, the Illinois legislature dramatically changed the scope of the habitual criminal act such that a defendant's prior convictions could only qualify him as an habitual criminal if they were committed after he was 21 years of age. And under this newly amended statute, Mr. Bryant would no longer be branded an habitual criminal and therefore would no longer be eligible for a natural life sentence. Mr. Bryant in his pro se motion for leave to file and the attendance successive petition presently asserts that the 2021 amendment to the habitual criminal act reflects a decisive shift in society's evolving standard of decency toward greater leniency for youthful offenses such that his natural life sentence as applied to him violates the proportionate penalties clause of the Illinois Constitution. But the subject of this appeal and this court's task in this case is not to determine whether his natural life sentence violates the proportionate penalties clause. Rather, the question in this court is more limited. It's whether Mr. Bryant has made a prima facie showing of cause to raise a news claim and whether he has made a prima facie showing of prejudice. The case for cause here is straightforward. Illinois law states that cause exists where, quote, the petitioner did not have the legal tools to construct the claim before the rule was issued. Here, the activating ingredient, the central kernel of Mr. Bryant's proportionate penalties claim is the 2021 amendment to the habitual criminal act. Until the legislature amended that act in 2021 to exclude those in Bryant's shoes from eligibility for a natural life sentence, he did not have the legal tools to construct his proportionate penalties claim. You can look at Bryant's prior attempt in 2019 where he argued a proportionate penalties violation. That claim went nowhere because the law at the time foreclosed such a claim. On the prong of prejudice, Bryant does not need to definitively establish prejudice at this juncture. That's why we have three stages to the post-conviction proceeding act. He needs only make a prima facie showing of prejudice. And the Illinois law states where, quote, it is clear that the claim alleged by the petitioner fails as a matter of law or where the pleadings are insufficient to justify further proceedings. And it simply cannot be said that his proportionate penalties clause here that rests on this amendment fails as a matter of law. That 2021 amendment lies at the heart of his claim and viewed within the broader context of dramatic reforms to the sentencing of juveniles and young people. That amendment reflects a decisive shift in the concepts of elemental decency and fairness that shape the moral sense of the community. That's language from Leon Miller. And as the Supreme Court, the U.S. Supreme Court has acknowledged, the, quote, clearest and most reliable objective evidence of contemporary values is the legislation enacted by a state's and its attendant natural life sentence to remove Mr. Bryant and those like him from its ambit. And that in doing so, the legislation crystallizes the current state of our moral sense of our moral standing in the community. We no longer tolerate such a such a sentence for individuals like Mr. Bryant. The state, for its part, spends the majority of its brief trying to convince this court that Bryant's proportionate penalties clause is simply based on Miller versus Alabama. And because Miller versus Alabama cannot establish cause for a proportionate penalties clause claim, Mr. Bryant is out of luck. But again, it can't be stressed enough. It's not Miller that lies at the heart of Bryant's claim. Miller certainly was a catalyst for, along with many other changes in the law and society that led to that 2021 amendment. But unless and until the legislature amended that statute in 2021, this claim was going nowhere. Now, that amendment has breathed life into a proportionate penalties clause that certainly shouldn't be the subject of this room. I quickly want to touch on the state's reference to retroactivity in its brief. First, nothing in the language of this amended statute affirmatively shows that the legislature wanted the statute to apply only on a prospective basis. This is not a scenario where the legislature demonstrated the change in the law was intended to only affect people moving forward. And that's in contradistinction to the statutory amendments applicable to under 18-year-olds that codified the Miller factors and made the firearm enhancements prospective only. That statute begins, quote, on or after the effective date of this amendatory act, et cetera, et cetera. There's no such language in the HCA amendment that's analogous to that language. To this point, it's significant that the Illinois Supreme Court in People versus Stewart did not find that the 2021 amendment was prospective only. That decision applied the 2021 change in the law to defendants whose habitual criminal sentences had taken root before 2021. But even if we take this statute as non-retroactive, the question of retroactivity is in no way equivalent to or coextensive with a proportionate penalties determination. Retroactivity is a question of statutory interpretation. Did the legislature want this statute to automatically apply to every person in the affected class going back to time in memorial? Bryant does not ask this court to make that finding. He submits that the natural life sentence as applied to him violates the proportionate penalties clause, given that Illinois law no longer tolerates it as applied to the class to which he belongs. When it amended the habitual criminal act in 2021, the legislature surely acted with knowledge of the proportionate the legislature to make the judgment that it didn't want this amendment to apply automatically to every person going back all the way in time, because some of these people in Mr. Bryant's shoes will not have been rehabilitated, or their sentences will not offend the proportionate penalties clause because their offenses were so severe, or they have shown utter incorrigibility. But the legislature wanted courts to go back on an individual basis and determine whether there's proportionate penalties clause violations. So I believe my time is up. I will cede to the state. Thank you. All right. Thank you. Questions? I do have a question, Mr. Payne. Maybe in your reply brief, you suggested this idea that this statute was not retroactive, but did you argue that in your opening brief that the statute was not retroactive? Well, actually, Mr. Bryant, in his pro se motion for leave to file it in the successive petition, acknowledges that it's not retroactive, and that's by virtue of the statute on statutes. Where a statute doesn't speak to the question of whether it's perspective only or retroactive, and it concerns a procedural change, then it's treated as perspective only. So Mr. Bryant, in his pro se petition, as I said, acknowledged that this statute is not retroactive. Now, of course, his concession and my concession doesn't bind this court. Stewart really is a very interesting case on that question, because it didn't discuss retroactivity, yet it still applied the statute going back in time. I guess you're still not answering my question. Did you argue in your brief, either opening, maybe in reply, I don't recall exactly, but did you actually argue what you're arguing now, that this statute is not retroactive? And then I can ask you a follow-up. I see, Your Honor. And the state has responded and has indicated that the retroactivity, the lack of this, I mean, I'm sorry, the fact that it is not retroactive is part of their argument. And now you're bringing up something that I don't think they really had an opportunity to respond to. So I just want to know, if you didn't do it, I don't recall this position you're taking. And I just want to know, I'm not saying that we can't consider it, but did you argue that this statute was not retroactive in your opening brief? I want to be clear about your asking. Are you asking, did I argue that this statute is retroactive or, because I acknowledged Mr. Bryant's concession in his pro se petition, that the statute is not retroactive. And I think- But today, didn't you suggest to us that there's nothing about this legislation where the legislature has not indicated that this is prospective only? Did you say that or not? I did say that, Your Honor. And my point in saying that was that the legislature, the legislature, when it signals we want this statute to apply from this state and going forward only, that makes it much harder for a petitioner or for me in representing a petitioner to argue that the statute, notwithstanding that prospective only language, should be applied going back in time under the proportionate penalties clause. But we don't have such in this statute that the legislature made a reasoned choice to only apply it going forward. It's only by virtue of the operation of the statute on statutes that Mr. Bryant has a retroactivity problem. Again, retroactivity is not the same question as whether he has made a prima facie showing of cause and prejudice under the proportionate penalties clause. So retroactivity really is a red herring in this case, because if this statute were retroactive, we would have no occasion to be discussing the proportionate penalties clause. It's only because we acknowledge it's not clearly retroactive that we have to go through the channel of the proportionate penalties clause. Does that answer your question, Your Honor? Sort of. You don't seem satisfied. That's okay. No, I think you've explained your position. So then my next question is, is there a case where the statute, like, is there any kind of post-conviction case that you could point to where, regardless of whether the statute was retroactive, the court will permit the claim to go forward? Your Honor, I don't have a post-conviction case that is on the top of my head that I can identify. But I think the case cited in our briefs of People v. Barnes is highly analogous. Because in that case... You're right, but am I wrong, though? Was Barnes the one where the mandatory add-on was changed for people under a certain age? Absolutely. For non-robbery? Yes. So that case we had, he was convicted, sentenced to as a mandatory firearm add-on. While his case was pending on direct appeal, the law changed to make those add-ons discretionary. And as I just referenced, the language in that statute is very clear. It is only to apply prospectively. Notwithstanding that legislative judgment, the Fifth District held that that change in the law still reflected a change in society's standard of decency such that his sentence violated the proportionate penalties clause. So Barnes, while it's not a post-conviction case, I think really does teach a lot and provide a way for analyzing this case. Again, Barnes involved determining, was this a proportionate penalties violation? This court does not need to go that far. Your Honors can simply decide cause and prejudice and be done with it. Barnes involved a 15-year-old defendant, though, which is the difference here. Yes, Your Honor. Barnes was 15 years old and Mr. Bryant was 19 at the time of his qualifying offense, 29 at the time of the armed robbery for which he is actually sentenced. So that is a factual distinction. But, Justice House, I want to point out that Barnes involved a change in the law that affected a class of individuals that included that class. This statutory change directly affects the class of individuals to which Mr. Bryant belongs. So in that way, yes, the ages are different, but the legislature made a judgment that qualifying offenses, it didn't talk about, well, if you were 45 at the time of your third class ex, no dice. It talks categorically that offenses committed under 21 can no longer count for qualifying offenses for a natural life sentence. And that is a very important reimagining of the recidivist statute in Illinois. What about that Lawson case? People versus Lawson. Let me refresh my recollection. So Lawson, pardon me, Lawson, if I remember correctly, that was before the amendment, correct? Yes. That was 2015. Yes, it was. Yes. So in Lawson, Lawson represents, I believe, the same type of reasoning that underpins people versus banks, which also foreclosed a proportionate penalties clause to habitual criminal sentences before this amendment. In those decisions, um, we're missing the important, all important ingredient of the 2021 amendment. So we readily acknowledge up until this amendment happened, this claim was dead in the water. That's evident from the case law and evident from what happened to Mr. Bryant's previous successive petition. But once that 2021 amendment took hold, that certainly constitutes cause because he cannot, could not have raised this claim before that change in the law. And we, we submitted, it establishes a prima facie showing prejudice because it is, it does enough to show a change in society's standard of decency to at least jump the prejudice prong of, and get his foot in the door for further post-conviction proceedings. Doesn't that kind of, if we are to proceed in the manner in which you are seeking, doesn't it kind of open the floodgates for any other post-convictioners who fell under the Habitual Criminal Act prior to the amendment? I believe that, yes, yes, your honor. But your as-applied argument is really just the tool, the, the amendment is the as-applied piece or because you, or is it the age? I believe that it's, I believe that it is, it is the amendment that is the channel through which he and people like him in the class of individuals whose eligibility for habitual criminal sentencing rest on convictions from before the age of 21. I believe Mr. Bryant and anyone else in that class, I don't know how many people there are, but in that class have at least enough to get their foot in the door for a successive petition. Now, I think, your honor, that the determination of whether those individual as-applied challenges succeed is a fact, is a fact, a fact heavy determination that needs to turn on what, how is, how is this person rehabilitated? Is this person changed? Has this person spent the last decades in prison shanking fellow inmates? Are they attacking, have they, do they have tickets? It also depends on the severity of the underlying crimes and any signs of incorrigibility. So, I think getting into those fact determinations at the leave to file stage is putting the cart before the horse. This is merely asking, can he initiate post-conviction proceedings so that he whether the proportionate penalties clause was in fact violated here. And so, cause is simply that element, cause is that element for any, any post-conviction petitioner who was subject to the act prior to the 2021 amendment. Yes, your honor, except with the important, except, except with the important limitation that it would not apply to anyone whose priors occurred after the age of 21, right? I don't think that if Mr. Bryant's first class X had happened when he was 22, no dice, then you're, then you're kind of in this Hilliard style. Well, the legislature made a change as to 21 year olds. I was just 22. Maybe that's, maybe that speaks to my situation. The, the courts of Dorsey, Hilliard have been clear that that's where you're not directly affected by the statutory change or by the change from the U.S. Supreme court, then you don't have cause to file a new proportionate penalties clause claim. So I think the opening of the floodgates would be rather limited in how many people are actually affected by this decision. Thank you. So if there are no further questions, I would ask this court to reverse the denial of leave to file and allow Mr. Bryant to pursue further post-conviction proceedings. Thank you. Thank you. Ms. Reeve, you may proceed when you're ready. May it please the court, assistant state's attorney, Kimberly Reeve on behalf of the people. Today we ask this court to affirm the decision below. A defendant's claim is simply based on the evolving standards of decency surrounding sentencing of youthful offenders, which is this started with an evolution from Miller and has been ongoing since then. But in 2021, Dorsey made it clear that Miller principles cannot be relied upon for proportionate penalties clause claims because Illinois has always recognized and considered age in sentencing. The amendment to the HCA is not an intervening factor that caused a new claim under these standards. This is particularly telling when defendant admits that the HCA does not apply retroactively. He mentioned he was not sure of how he addressed that in the opening brief, but on page 22, arguably, yes, he puts it in defendant's perspective, but he says Bryant acknowledges that the 2021 amendment to the act was enacted after he was sentenced and does not apply retroactively to him. And he does not make any further argument of whether this is true or not. And then in the reply brief on page four or on page seven, excuse me, he further states that it's not retroactive. Defendant also admitted that his claim is not that the HCA that applied to him was disproportionate and did not consider his rehabilitative potential or age at the time. And in fact, defendant admits that prior to the 2021 amendment, courts have consistently found that the then applicable HCA took into account rehabilitative potential, which necessarily includes age element. So this does not make his claim novel or new. Moreover, in the reply brief, again, he lists more case law that he claims is actually in favor of his argument as prior as to the prior amendment, as prior to the amendment, excuse me, because he would not have had a plausible path of success on this type of claim. However, the standard is not whether there would be a plausible path of success, but whether it is whether the claim could have been brought at all, which he, as evidenced by the case law that he submits that we submit, this claim has been available to him. The reference that we use in our unpublished case there in Simmons also addressed this when it found there to be no cause, even if the law is against the defendant. He was not prevented from raising this very claim pre-Miller principles and before the amendment. And then just to some of his addressing claims, he relies on the Barnes case as being similar here, but arguably the Barnes case is very distinguishable where the firearm enhancement that was mandatory and then it was changed to being more of a permissive enhancement. The Barnes court specifically found that the mandatory firearm enhancement did not account for the rehabilitative potential of the defendant. However, again, the HCA as it was applied to defendant has consistently been found to consider the rehabilitative potential. This is evident through the Dunning case and this is also evident through Lawson as well. Lawson specifically was based on these Miller principles and these evolving standards of decency when sentencing youthful individuals. And still the Lawson court found that the HCA did consider rehabilitative potential under the Proportionate Penalties Act. It's interesting that defendant relies on a retroactive application of the 2021 amendment while simultaneously admitting that it does not apply retroactively. So it makes it wishy-washy on how this actually establishes cause when the amendment does not So based on just Dorsey and prior case law such as Dunnigan and Lawson, defendant could have brought this claim earlier despite the difficulty in which it may have posed him. Just because the amendment would have made this claim easier, ease of argument is not the standard required to demonstrate cause. And then as for prejudice, he just broadly discusses these whether the HCA, as applied to him, did not account for his age and he is not challenging whether the amendment applies retroactively to him. So it's unclear of how he can actually establish prejudice in that situation. With that, if there are any questions, I am open to questions. All right, thank you. Any questions? Sure, I have a couple. As far as the retroactive application, I understand you really didn't have an opportunity to address it because I thought it was essentially conceded. But does that matter in any event? I think ultimately it does not matter. But I think it's important to recognize that he did try to apply it retroactively while claiming that it doesn't apply retroactively. So it makes it unclear of how, when you break it down to it, these evolving standards makes this amendment be that intervening change in these already evolving standards that we have for filler to establish both cause and prejudice in this instance. Well, okay, let's assume it isn't retroactive, okay? With that, I guess I'm asking, would that make a difference if it was not retroactive? Or I guess I'm saying that incorrectly. Let's assume that the act would apply to him. Does that make any difference? That it would apply retroactively to him? Yeah. That potentially could make a difference. But as we pointed out in our brief that, and as defendant admits, there's no language in the statute that the legislator intended to apply this retroactively. And when we look at that and how statutes are considered in whether they are retroactive or prospective, then we rely on the statute on statutes section four. And that says that generally everything will apply prospectively unless the legislator says otherwise. So as it stands right now, I don't think we can apply this retroactively. But you would agree that if someone were sentenced today, or there was an attempt to find that they were a habitual criminal under the act, this particular person, Mr. Bryant, would not be, he could not be sentenced if this were present day, right? Because his first crime occurred when he was 19. Correct. If it was something that he was actually sentenced today, that would make a difference. But the legislator is presumed to understand that they would create different class of defendants with changing statutes, and they elected not to make that retroactive. So that's what... Okay. And explain again, or if you would, at the time, well, the last, you know, Dorsey talked about a case from 1899 that said we've always treated minors differently. However, does it matter in this case that this statutory legislation wasn't even in existence back at that time? In other words, the Armed or Habitual Criminal Act came into be, I think it was in the 80s. I'm not sure. Correct me if I'm wrong. But it wasn't in place previously, was it? It's not some... I don't know if you can compare the ability to raise a claim saying it was always there for him, when realistically or practically speaking, there was no act like this. So I don't know. I just don't... I'm not sure that we're comparing, you know, apples to apples. Right. From my understanding of the history of the act... And I may be wrong on the time frame. It could go back further than that. But it's basically your three strikes law that is referenced, you know, in a number of cases. I think there was a U.S. Supreme Court case. Maybe I'm misrepresenting, but I think the third conviction was for stealing a golf club. And the U.S. Supreme Court upheld that third strike. Do you remember that case? I do not. Maybe Mr. Payne does. Well, whatever. All right. I'm not going to ask you about a case that, you know, you don't remember. But I guess my question was, you know, back when this legislation became effective. I mean, we're not talking about centuries ago. The three strikes law is not... was not a 19th century or maybe it was in some states. It wasn't in Illinois. Right. Your position is this is really just a Miller claim and you can't use a change in a statute when either way you look at it, it's still a Miller claim. Correct. Just because he is heavily relying on those evolving standards. And this intervening, this statute is not necessarily an intervening change. As again, Dorsey has always said a lot. And the act, I believe it was, I can't remember the original date that it was enacted. I know it was rescinded at some point and then reenacted in the early 80s. So maybe a few years before defendant's third offense. But even then, if you take, if you look at the case law, that based on the case law, again, Lawson, Dunnigan, everything falling into that category, they have consistently found that the HCA has accounted for age in rehabilitative potential. And that is why defendant cannot demonstrate cause is because based on these pieces, he clearly could have brought this claim up even pre Miller and post Miller, he could have brought this up. And he did not until now, during this, just after this event. But isn't it, isn't it Mr. Payne's position that cause arises simply out of the fact that the amended statute wasn't available, not as a result of age or the emerging brain science? He's not using the brain science as the cause piece. He doesn't get to the brain science until he starts talking about prejudice. I think my notes, as I was jotting down when he spoke, was cause is established simply because he did not have the legal tools until the act was amended. Did I misunderstand Mr. Payne? That is what he's attempting to do for sure. I disagree that this, this amendment provides that cause, simply because when you break it down of why this amendment came about is because of those evolving standards that have that, entire country has been working on since Miller. And, and because it stems out of that, it's not a, a new intervening, crazy idea that now makes this claim viable. And again, especially as we look at these previous cases that have brought up this exact argument of whether age is considered in applying the habitual criminal act. There are no further questions for those reasons. I'm sorry. No, I don't have anything else except Mr. Payne says the legislature intended the courts to decide these cases. Once they pass this new act, it was their intention that the courts hear cases like this one and make a decision case by case, you know, because I'll be honest with you. And I saw 38 years and nobody was hurt or shot or killed. Actually, I've seen cases of people killed two people and get less time than this. I'll be honest. So is that what the legislature intended that we, they, they pass this law, but they certainly knew that this type of case would be brought up. Potentially, they may have known that this type of case would be brought up just because they could recognize that it will create a different class of defendants. But the fact that the statute does not specifically say that it applies retroactively stems that, that issue so much as that it, the legislature is recognizing that there will be differences. And then as, yes, there's some people that have committed murders and done less time than this. But the basis of the statute is not so much of committing like a single crime. It's having these multiple crimes and not demonstrating a rehabilitative potential. All right. That, that, that's all I had. May I, may I ask one last question? So are you, Ms. Reeve, are you suggesting that this statute perhaps is retroactive? It could be retroactively applied? No, I, I do not believe it should be retroactively. But you, but you did indicate there's no language indicating that it's, it's prospective only. Correct. Well, I, there's no language indicating in either instance, but when we look at how statutes are determined, whether they're prospective or retroactive based on the lack of the language being there, it's based on their effective dates and on the statute of statutes. Okay. All right. Thank you. No further questions? No. No. All right. For all these reasons and those stated in our brief, we ask this court to affirm the decision. Thank you. Mr. Payne, you can take a few minutes for rebuttal if you like. Thank you, Your Honor. I'll start with the question of retroactivity because it was just, just discussed. The state, again, fixates on the question of retroactivity and I first want to state emphatically that we live with the reality that this statute does not apply retroactively, but the lack of prospective only language within the statute, I think indicates that the legislature, while it didn't want the statute to apply automatically to everyone in Mr. Bryant's class, it did, it did, the legislature did act with knowledge of the proportionate and the way that that clause would be interpreted and applied on a case-by-case basis to people in this class. As Justice McBride states, the retroactivity question, or as she questioned, the answer is that it doesn't really matter here. Retroactivity is a completely separate question to whether there's a proportionate penalties clause question. It would precede the constitutional question as a statutory question. We're not arguing that it's retroactive. The state argues that this is basically a reheated Miller claim, right, that because Miller existed going back to, what was it, 2012, everything after that is just caught up in the wave of Miller and cannot, cannot establish cause for any subsequent sentencing challenge. This is, to me, a truly Orwellian use of Miller as a basis not to expand leniency in sentencing, but to bar the courthouse doors to people who are serving natural life sentences or extremely long sentences based on statutes that are no longer, would no longer allow that sentence. I think to use Miller that way and to pin this claim down as a mere Miller claim is a misunderstanding of what we're saying, and it's also a complete corruption of what Miller stands for. As Justice Cobb said, the amendment is the no claim, just, and the state seems to suggest this claim isn't novel, and he could have asserted it before. Again, Mr. Bryant, Mr. Bryant did. He raised this claim in 2019, and it suffered a certain doom under the prevailing legal landscape at that time. The amendment in 21 changed things fundamentally, and so that is, as Justice Cobb said, the key intervening moment here was that 2021 amendment. Council said that Barnes, in Barnes, the firearm enhancement did not account for the rehabilitative potential, and here Illinois courts have routinely found that the HCA accounts for rehabilitative potential. Well then, what, how can we account for the 2021 amendment? Doesn't that change itself evince a legislative judgment that crimes committed under 21 should not be, that shouldn't be used for eligibility for natural life sentence, that they don't account for the rehabilitative potential, that you can't use those youthful crimes as proof that a person cannot be rehabilitated. The 21 amendment should kind of strike the slate anew in this area of the law. As to prejudice, under the cruel and degrading prong of the proportionate penalties clause under which we are proceeding, we have to rely on the changing standards of decency, and that the best evidence for that change in the standard of decency is the legislative amendment. That's not my language, that's the U.S. Supreme Court's language in Atkins versus Virginia and in Grant. Again, my final point, people versus Dorsey. It matters above all here that the operative language did not exist before 2021. In Dorsey, as Justice McBride stated, the principle that we treat juveniles differently from adults has existed for time immemorial. The prior existence of the Habitual Criminal Act, going back to the 1980s, doesn't mean that Bryant could pursue that claim previously and have any success. The change, again, is the 2021 amendment that removed people like Bryant from the reach of the statute. If your honors have any questions, I'd be happy to address them. Any questions? All right, very well. Thank you very much. This case will be taken under advisement and a decision will be entered in due course. Thank you very much. I enjoyed the argument and you both did very well. Appreciate it. Thank you. Have a great day. You too. Thank you.